UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUANITA DOWNS,

                              Plaintiff,          **No. 6:15-cv-06644(MAT)**
                                                  **DECISION AND ORDER**

              -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

Represented by counsel, Juanita Downs ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On June 29, 2012, Plaintiff applied for DIB and SSI, on the basis of a learning disability affecting her ability to read and write, bipolar disorder, and depression, with an onset date of January 1, 2008. These claims were denied initially on September 19, 2012. Plaintiff requested a hearing which was held on January 28, 2014, in Buffalo, New York, before administrative law judge John P. Costello ("the ALJ"). Plaintiff appeared at the hearing with her attorney and testified, as did Peter Manzi, an

impartial vocational expert ("the VE"). T.29-70.[1] On May 1, 2014, the ALJ issued an unfavorable decision. T.11-28. The Appeals Council denied Plaintiff's request for review on August 26, 2015, making the ALJ's decision the final decision of the Commissioner. This timely action followed.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Neither party has filed a reply brief. The Court adopts and incorporates by reference herein the comprehensive factual recitations contained in the parties' briefs. The Court will discuss the record evidence in further detail as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2012, and has not engaged in substantial gainful activity ("SGA") since January 1, 2008, the alleged onset date. Although Plaintiff testified that she is currently working about 20 hours per week as a housekeeper at a hotel, this work activity does not rise to the level of SGA.

---

[1]
Numbers preceded by "T." refer to pages from the certified administrative transcript, filed by Defendant electronically on CM/ECF.

At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, bipolar disorder, depression, low average cognitive ability, and personality disorder.

At step three, the ALJ gave particular consideration to the listed impairments of 3.03 (Asthma), 12.04 (Affective disorders), and to 12.09 (Substance abuse disorders) but found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of these impairments, or any other impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. With regard to the four domains of functioning, the ALJ found that Plaintiff has mild limitation in activities of daily living; moderate difficulties in social functioning and in maintaining concentration, persistence, or pace; and has not experienced episodes of decompensation. Additionally, the ALJ found, although Plaintiff appeared to assert that she meets Listing 12.05C (Intellectual disability (IQ test scores)), her subtest scores do not qualify for the needed Intelligence Quotient (IQ) score under that Listing. Furthermore, in the TONI-3 (Test of Non-verbal Intelligence), Plaintiff obtained a quotient of 91, indicating "that she actually functions in the average range of intelligence." T.17. Finally, her overall measured intellectual functioning was characterized as average by the school psychologist. Id.

The ALJ proceeded to determine that Plaintiff has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: She should avoid concentrated or excessive exposure to respiratory irritants (dust, orders, fumes, extremes in temperature, and humidity), and she is limited to performing simple tasks, with occasional interaction with co-workers and the general public." T.19.

At step four, the ALJ found that Plaintiff has no past relevant work; was a younger individual age 18-49, on the alleged disability onset date; and has at least a high school education and is able to communicate in English.

At step five, the ALJ relied on the VE's hearing testimony to find that Plaintiff can perform the requirements of various occupations that exist in significant numbers in the national economy, such as Hand Packager (DOT #920.587-018), unskilled, with an SVP of 2, and a medium exertional level; and Laundry Sorter (DOT #361.687-014), unskilled, with an SVP of 2, and a light exertional level. Accordingly, the ALJ entered a finding of not disabled.

**SCOPE OF REVIEW**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the

-4-

Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff's sole challenge on appeal deals with the weight given by the ALJ to portions of the medical source statement by one of Plaintiff's primary care providers, Dr. Diana Herrmann. See Pl.'s Mem., pp. 13-17.

The applicable regulations state that "[r]egardless of its source," the Commissioner "will evaluate every medical opinion [she] receive[s][.]" 20 C.F.R. § 404.1527(c). Unless a treating source's opinion is given controlling weight, the Commissioner "consider[s] all of the following factors in deciding the weight [she] give[s] to any medical opinion[,]" 20 C.F.R. § 404.1527(c),

namely, whether there is an examining relationship; the nature, extent, and length of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; specialization by the provider in the area on which she is opining; and any other factors brought to the Commissioner's attention as tending to support or contradict the opinion. See 20 C.F.R. § 404.1527(c)(1)-(6).

As the Second Circuit has explained, the opinion of a treating physician "is accorded extra weight" based on the "continuity of treatment" provided and "the doctor/patient relationship" developed, which place the physician "in a unique position to make a complete and accurate diagnosis of his [or her] patient." Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983) "Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[,]" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted), Plaintiff has not argued that Dr. Herrmann qualifies as a "treating physician." As Respondent points out, while Dr. Herrmann indicated on her report that she had treated Plaintiff for more than five years as her primary care physician, see T.545, Plaintiff never listed Dr. Herrmann as one of her medical providers, instead stating that her primary care physician was Dr. Sharon Berkowitz. See T.234-35. Dr. Herrmann and Dr. Berkowitz both practiced at East Ridge Family Medicine, but the treatment notes from this

practice indicate that Plaintiff had only one office visit with Dr. Herrmann, on December 20, 2013. T.452-53. Plaintiff regularly received care from Dr. Berkowitz and Dr. Lindsay Phillips, and occasionally from Dr. Jeanne Beddoe. See T.280-388, 452-93. The Court finds that Dr. Herrmann has not provided sufficient continuity of care or developed a treatment relationship for purposes of applying the treating physician general presumption of deference. See, e.g., Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (unpublished opn.) (finding that ALJ did not err in refusing to give controlling weight to treating source opinions because one of the physicians had only examined the claimant once, while the other had only four treatment notes bearing his signature, two of which were merely co-signatures on reports by other providers); Shatraw v. Astrue, No. 04-CV-510, 2008 WL 4517811, at *10 (N.D.N.Y. Sept. 30, 2008) ("Doctors who see a patient only once do not have a chance to develop an ongoing relationship with the patient, and therefore are not generally considered treating physicians.") (citations omitted).

The ALJ reviewed the January 2014 report issued by Dr. Herrmann, which was on a form created by Plaintiff's attorney titled "Medical Statement Regarding Physical Abilities and Limitations for Social Security Disability Claim." T.545-48. In the form, Dr. Hermann listed Plaintiff's diagnoses as bipolar disorder, migraines, and asthma. She opined that in an 8-hour day, Plaintiff

-7-

could sit for at least 6 hours (and sit continuously for more than 2 hours at a time); stand/walk about 4 hours total (and for 1 hour at a time); frequently lift less than 10 pounds; occasionally lift 10 pounds; and could walk about 6 blocks at a time. T.545. Dr. Herrmann opined that Plaintiff's mental ability to perform work varied. T.546-47. When asked to provide the medical or clinical findings supporting her assessment, Dr. Herrmann stated that Plaintiff's bipolar disorder was currently "untreated," that she was exhibiting "extreme irritability" when directed by supervisors, and that she had difficulty carrying out and understanding detailed instructions. T.547. Dr. Herrmann indicated that Plaintiff's symptoms and limitations, particularly irritability, would increase if she were working full-time. T.548.

The ALJ assigned Dr. Herrmann's opinion "little weight" for various reasons. First, the ALJ noted, there were no impairments to support the physical limitations she assigned. This was a proper factor for the ALJ to consider under the Commissioner's regulations. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion."). The ALJ did not find that Plaintiff has any "severe" physical impairments, a conclusion with which Plaintiff does not take issue on appeal. Her only physical impairments are asthma, headaches, and obesity. In light of her routinely normal physical

examinations, the record does not support Dr. Herrmann's opinion that these conditions affect Plaintiff's ability to sit and stand.

Second, the ALJ noted, Dr. Herrmann did not explain why she stated Plaintiff's bipolar condition was "untreated," but nevertheless had a prognosis of "good". <u>See</u> 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Moreover, this aspect of the opinion reveals an internal inconsistency, which is a factor the ALJ was entitled to consider. <u>See</u>, <u>e.g.</u>, <u>Micheli v. Astrue</u>, 501 F. App'x 26, 28 (2d Cir. 2012) (unpublished opn.) (finding that substantial evidence supported ALJ's decision not to accord controlling weight to treating physician's opinion, where physician's opinions were internally inconsistent and inconsistent with findings by other treating physicians and treatment reports).

The ALJ also discounted Dr. Herrmann's report because, while she indicated that Plaintiff could not perform tasks, "such as completing a workday and performing at a consistent pace, etc., over 20% of the work time," Plaintiff was "performing all of these functions now at 20 hours per week, and she was working that same amount of time when the form was completed." T.21-22. Thus, the ALJ found, Dr. Herrmann's report was inconsistent with Plaintiff's actual functional abilities. Again, an ALJ may accord less weight to a medical opinion when it is inconsistent with other record

evidence. <u>See</u> 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion."); <u>see also</u> <u>Salmini v. Comm'r of Soc. Sec.</u>, 371 F. App'x 109, 114 (2d Cir. 2010) (unpublished opn.) ("[W]e see no error in the ALJ's general decision to adopt Dr. Wasco's findings except insofar as plaintiff admitted 'to a greater degree of functionality than that found by Dr. Wasco.' For that reason, we see no error in the ALJ's decision to credit plaintiff's testimony that he could lift 35 pounds, rather than merely 10 pounds as opined by Dr. Wasco. Indeed, there is no dispute that plaintiff believed (and continues to believe) that he can lift up to 35 pounds.") (citing <u>Wright v. Barnhart</u>, 473 F. Supp.2d 488, 493 (S.D.N.Y. 2007) (no error where "[t]he ALJ rejected the treating physicians' analyses only as far as they conflicted with [the claimant]'s testimony about how her impairments affected her functional capacity")). The ALJ reasonably determined that Dr. Herrmann's opinion that Plaintiff would be off-task or unable to perform for more than 20 percent of an 8-hour day to be inconsistent with Plaintiff's testimony about her activities. At the hearing, Plaintiff testified she was currently working two to three days a week for about 20 hours per week. T.35, 37, 39-40. Assuming Plaintiff never worked a full 8-hour day, she would have had to work almost 7 hours a day for 3 days in order to clock 20 hours a week. If Plaintiff actually

was unable to perform for even 21 percent of an 8-hour day (1.68 hours), she likely would not have had sufficient time for her part-time work as a hotel housekeeper. As Defendant argues, the level of work activity performed by Plaintiff is inconsistent with Dr. Herrmann's opinion that Plaintiff could not perform for more than 20 percent of an 8-hour day. The Commissioner's regulations provide that part-time work, even if not substantial gainful activity, may show a claimant is able to do more than they actually did. See Frawley v. Colvin, No. 5:13-CV-1567 LEK/CFH, 2014 WL 6810661, at *11 (N.D.N.Y. Dec. 2, 2014) (ALJ's consideration of claimant's part-time work was "entirely proper" and supported his decision); Fancher v. Colvin, No. 3:12-CV-1505 GLS, 2014 WL 409080, at *4 (N.D.N.Y. Feb. 3, 2014) (claimant's part-time work supported ALJ's decision to discount physician's opinion).

The Court acknowledges that one of the reasons cited by the ALJ, namely, that the form given to Dr. Herrmann to complete appeared to be skewed to lead to finding of disability, T.22, reflects a misreading of the form by the ALJ. Specifically, the ALJ stated that apart from Category I, all the other categories of limitation stated that "the person could not perform any task 10% of the time *or more*-leading to a finding of disabled in many cases, even if just one box were checked outside 'Category I.'" T.22 (emphasis supplied). This is not what the form says. Category II, for instance, applies when the reviewer believes that the claimant

is limited *less than* 10 percent of the time.[2] However, the Court agrees with Defendant that the ALJ's misstatement is not fatal to his decision, because substantial evidence supports his decision to discount Dr. Herrmann's opinion.

The ALJ discussed the substantial evidence in the record that supported his finding that Plaintiff's mental impairments do not cause disabling limitations on her ability to perform work-related activities. At a follow-up with her primary care physician in September 2008, Plaintiff reported that she was pleased with the mental health treatment she had received at Genesee Mental Health Center, was doing well in group therapy, and had received a diagnosis of bipolar disorder. T.332, 333. At a December 2008 visit related to gynecological complaints, Plaintiff reported to her primary care doctor that her bipolar disorder seemed to have stabilized with her medication, and that she felt good. T.331. In May 2009, Plaintiff had her annual gynecological visit at East Ridge Family Medicine. T.341. Plaintiff reported doing better with her medication, and she denied any psychiatric symptoms,

---

[2]      The form lists mental abilities for work and has spaces to indicate the amount of limitation a claimant has for each ability. T.546-47. The choices given for the level of limitation to be assigned by the provider are Categories I through V. T.546. Category I indicates no limitation, i.e., that the claimant's performance is not precluded, while Category V indicates the claimant's performance is entirely precluded. Id. Categories II, III, and IV rate the claimant's degree of limitation as a particular percentage of an 8-hour work day. So, Category II means that the claimant's performance is precluded for less than 10 percent of an 8-hour day; Category III means performance is precluded for 11 to 20 percent of an 8-hour day; and Category IV means performance is precluded for more than 20 percent of an 8-hour day. T.546.

including depression. T.343-44. In December 2009, Plaintiff again participated in the partial hospitalization program, but was discharged upon her request as she felt that she had too many appointments, needed less structure and supervision, and her medications were working. T.510. In May 2010, she saw Dr. Berkowitz for a routine gynecological visit and told Dr. Berkowitz that she felt like she was doing well in regards to her bipolar disorder and that her mood was stable. T.307. Plaintiff was "[d]oing very well on lithium," T.309, and had a normal affect, her mood was not restrictive, and her insight and judgment were normal. T.308. In June 2011, at a visit regarding a possible pregnancy, Plaintiff reported that she was doing well even though she had let her bipolar disorder medications lapse. T.293-94. As the ALJ noted, "with few exceptions—such as when confronted with the death of her friend, and of her grandmother, or when on street drug THC ([T.498-99, 504])—[Plaintiff]'s mental status examinations were generally moderate, at worse [sic], even when not on prescription medication." T.20 (citing T.293 (6/2/11–she let medications lapse but is "doing well"); 403-05 (outpatient progress notes ("OPNs") on 5/3/10, 5/27/10, 6/10/10 reflect increased mood, increased motivation, increased energy); T.409 (OPN on 11/9/10 indicates decreased mood due to situational factors, i.e., concern about children's father); T.415 (OPN on 2/8/11 reflects increased mood, increased motivation, increased energy); T.416 (OPN on 2/22/11

reflects increased mood, increased motivation, increased energy, but also increased anxiety); T.437-38, 441 (OPNs on 5/9/12, 5/29/12, 7/2/12 reflect increased mood, increased motivation, increased energy); T.471 (told Dr. Berkowitz on 12/6/12 that she was not on medication or seeing therapist but "mood is okay"); T.495-96 (on 10/01/12, appears to be doing well with regard to her bipolar disorder). The ALJ pointed out that in the Psychosocial Assessment Admission note on January 28, 2010, Plaintiff was "well-groomed; her behavior cooperative; speech was within normal limits; her thought processes and content were organized and goal directed; her mood was of full range; affect was congruent; she was oriented times three; her recent and remote memory was intact; and her insight, judgment and impulse control were all good." T.20. "Notably," the ALJ stated, "these results were found despite the fact that the claimant and her fiance had just 'broken up,' and he had been put in jail with allegations involving the claimant's child." Id. (citing Ex. 4F, pp. 6, 9-10). Subsequent progress notes indicate that Plaintiff felt that she was a positive role-model for the neighborhood children, was attending a work program for 20 hours per week, and showed a positive reaction to working; "she experience[d] highs and lows at times but utilize[d] coping skills regularly and appear[ed] to be doing well" with a good prognosis. Id. (quoting T.495-96). At the last mental status examination in the record, from May of 2013, Plaintiff reported continuing to feel

calmer and more in control of herself; she felt she could begin concentrating on developing new goals. T.21 (citing Ex. 8F, p. 13). In sum, the Court finds that substantial evidence supports the ALJ's evaluation of Dr. Herrmann's opinion, and there was no error requiring reversal of the Commissioner's decision.

### CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's determination was not erroneous as a matter of law and was supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt #10) is granted, and the Commissioner's decision is affirmed. Plaintiff's motion for judgment on the pleadings (Dkt #8) is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
      HON. MICHAEL A. TELESCA
      United States District Judge

Dated:      September 26, 2016
            Rochester, New York